IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>RAYMOND M. MARTIN,<br>Defendant. | Case No. 09–CR–40037–JPG–1 |

**<u>MEMORANDUM & ORDER</u>**

This is a closed criminal case. Before the Court are Defendant Raymond M. Martin's Motion for Compassionate Release and Motion to Seal. For the reasons below, the Court **DENIES** both motions.

### I.     PROCEDURAL & FACTUAL HISTORY

In 2010, a grand jury returned a 15-count indictment against Martin for his role in a drug-trafficking scheme while working as a law-enforcement officer. (*See* Second Superseding Indictment, ECF No. 36; Martin's Mot. to Seal, ECF No. 291). A jury found him guilty of each count. (Am. J. 1, ECF No. 256). This included two counts under 18 U.S.C. § 924(c) for carrying a firearm while committing a drug-trafficking offense. (Second Superseding Indictment at 2–3).

At the time of Martin's sentencing in 2011, "a second or subsequent conviction" under § 924(c) carried a 25-year mandatory *minimum* sentence. *See* 18 U.S.C § 924(c) (2006) (amended 2018). This Court considered the guilty verdicts on both the § 924(c) counts and imposed the *maximum* sentence of life imprisonment. (Am. J. at 3). Martin is incarcerated at Federal Correctional Institution ("FCI") Oxford in Wisconsin. (Mot. for Compassionate Release 8, ECF No. 290).

In 2018, Congress amended the language of § 924(c) by enacting the First Step Act. Now the 25-year mandatory-minimum sentence does not apply unless a defendant was convicted under § 924(c) *before committing* the subsequent offense. In other words, Martin may not have received the 25-year mandatory minimum if sentenced today; he did not have a prior conviction under § 924(c) before committing the offenses in this case. That amendment to § 924(c), however, does not apply retroactively. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5221–22 (codified as amended at 18 U.S.C. § 924(c)) (stating that the amendment to § 924(c) "shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*") (emphasis added).

In April 2020, Martin wrote the warden of FCI Oxford and requested that the Bureau of Prisons (or "BOP") move for compassionate release on his behalf. (Martin's Mot. for Compassionate Release 11–14, ECF No. 290). The sole issue raised in his request was the change in law. (*Id.*).[1] Two months later, he moved for compassionate release in this Court under 18 U.S.C. § 3582(c)(1)(A).

## II.   LAW & ANALYSIS

Martin's Motion for Compassionate Release is frivolous: a nonretroactive amendment to a sentencing law is not an *extraordinary and compelling reason* warranting a sentence reduction. He also failed to show good cause for sealing the record.

### A.  Motion for Compassionate Release

Title 18, Section 3582(c)(1)(A) of the U.S. Code authorizes federal district courts to "modify a term of imprisonment once it has been imposed" when, "after considering the factors

---

[1]   Martin does not state whether the warden responded; but because he moved for compassionate release over 30 days after writing the warden, he exhausted his administrative remedies under § 3582(c)(1)(A).

set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ."

Congress tasked the Sentencing Commission with "describ[ing] what should be considered *extraordinary and compelling reasons* for sentence reductions, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t) (emphasis added). It did so in § 1B1.13 of the Sentencing Guidelines Manual (and Commentary):

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.
>
> <u>Commentary</u>
> <u>Application Notes</u>:
>
> 1. <u>Extraordinary and Compelling Reasons</u>.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) <u>Medical Condition of the Defendant</u>.—
>
>     \*    \*    \*
>
> (B) <u>Age of the Defendant</u>.—
>
>     \*    \*    \*
>
> (C) <u>Family Circumstances</u>.—

> \* \* \*
>
> (D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).
>
> \* \* \*
>
> 4. <u>Motion by the Director of the Bureau of Prisons</u>.—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of the reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.
>
> \* \* \*
>
> <u>Background</u>: The Commission is required by 28 U.S.C. § 994(a)(2) to develop general policy statements regarding the application of the guidelines or other aspects of sentencing in the view of the Commission would further the purposes of sentencing (18 U.S.C. § 3553(a)(2)), including, among other things, the appropriate use of the sentencing modification provisions set forth in 18 U.S.C. § 3582(c). In doing so, the Commission is authorized by 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." This policy statement implements 28 U.S.C. § 994(a)(2) and (t).

U.S. Sentencing Guidelines Manual § 1B1.13 & Commentary (U.S. Sentencing Comm'n 2018).

The Sentencing Commission's policy statement contains inaccuracies today. Because the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow federal inmates to move for compassionate release on their own, § 1B1.13 incorrectly states that compassionate release "may be granted *only* upon motion by the Director of the Bureau of Prisons." *Id.* (emphasis added).

Ever since Congress amended 18 U.S.C. § 3582(c)(1)(A)(i), courts have disagreed about applying § 1B1.13 of the Sentencing Guidelines; some courts no longer consider it an "applicable policy statement" because it alludes to an outdated version of the compassionate-release provision. And without an applicable policy statement, these courts contend that the *Judiciary* can determine what "other reasons" justify compassionate release. For example, Judge Dearie of the Eastern District of New York considered a similar case in *United States v. Haynes*, ——F. Supp. 3d——, 2020 WL 1941478 (E.D.N.Y. 2020). Haynes committed a string of armed robberies within a short period and received the then-25-year mandatory minimum sentence under 18 U.S.C. § 924(c). *Id.* at *1–2. But if he were sentenced under the amended § 924(c), then he would not have received the 25-year mandatory minimum. *Id.* So he moved for compassionate release premised on the notion that such a drastic change in law constitutes an *extraordinary and compelling reason* warranting sentence modification. *Id.* Judge Dearie agreed, noting that the court would be on "the right side of history" by authorizing itself "to determine what 'Other Reasons' . . . qualify as 'extraordinary and compelling' regardless of BOP's view on the matter and without having to await a someday-updating by the Commission of its unquestionably outdated policy statement." *Id.* at *15.

Other courts came to the opposite conclusion, highlighting the boundaries of federal courts' limited power. In *United States v. Winner*, for example, Chief Judge Hall of the Southern District of Georgia noted that "§ 3582(c)(1)(A) as amended by the First Step Act *still* requires courts to abide by 'applicable policy statements issued by the Sentencing Commission.'" ——F. Supp. 3d——, 2020 WL 2124594, at *2 (S.D. Ga. 2020) (emphasis in original). In other words, Congress *could have* removed that language in § 924(c) and authorized the Judiciary to decide what "other reasons" warrant compassionate release. *See id.* But it didn't. Instead, it specifically delegated that

task to the Sentencing Commission in 28 U.S.C. § 944(t). *Id.* Chief Judge Hall therefore criticized other district judges whose interpretation of the amendment "contravenes express Congressional intent that the Sentencing Commission, not the judiciary, must determine what constitutes an appropriate use of the 'compassionate release' provision." *Id.*

Finally, some courts settled on a middle ground. For instance, Judge Hornby of the District of Maine stated that because "[t]he Commission has not revised its policy statement to reflect [the] First Step Act change and is unlikely to do so soon, since it lacks a quorum of members," the Bureau of Prison's "discretion to identify other extraordinary and compelling reasons [is] assigned now to the courts." *United States v. Fox*, No. 2:14–CR–03–DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). That said, he also "conclude[d] that those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." *Id.* In his view, the Judiciary can fill in the gap; but its discretion is not unfettered. *See id.*

In the end, "[t]he defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020). And whenever a defendant moves for compassionate release under § 3582(c)(1)(A), the Court must "conduct a preliminary review to determine whether the motion is facially frivolous or premature." Second Am. Admin. Order No. 265 (June 4, 2020).

Martin argues that he is entitled to a sentence reduction because one of his statutes of conviction—18 U.S.C. § 924(c)—was amended to his benefit after sentencing. As a matter of equity, he argues that the change in law constitutes an *extraordinary and compelling reason* warranting a modification of his term of imprisonment to time served. For support, he cites *United States v. Urkevich*, No. 803CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019). Judge Camp

of the District of Nebraska found that the "[Sentencing] Commission's failure to amend Guideline § 1B1.14 and related Commentary following the First Step Act does not preclude a court from acting on motions for sentence reductions or using the catch-all provision in Application Note 1(D)." She ultimately concluded that compassionate release was warranted considering the sentencing disparity caused by the amended 18 U.S.C. § 924(c). *Id.* at 3–4. This Court, however, disagrees.

Martin's Motion for Compassionate release is facially frivolous because the Bureau of Prisons does not identify non-retroactive legislation as an *extraordinary or compelling reason* warranting compassionate release. Congress's aim in amending the compassionate-release provision was not to supplant the Bureau of Prisons with the Judiciary. Indeed, defendants are still required to exhaust all administrative remedies before proceeding to federal court, emphasizing BOP's continued role in processing requests for compassionate release. In enacting the First Step Act, Congress showed that it considered the entire compassionate-release framework, including BOP's role. But rather than removing the language in the compassionate-release provision directing courts to apply the Sentencing Commission's policy statement, Congress left it intact. And rather than amending 28 U.S.C. § 944(t) to no longer delegate the duty to define *extraordinary and compelling reasons* solely to the Sentencing Commission, Congress left that intact too. The clearest indication of congressional intent is found in the statutory text, and "[t]he Court is not freed by congressional silence but bound by Commission policy statements that Congress has expressly required the courts to follow." *United States v. Lynn*, No. 89–0072–WS, 2019 WL 3805349, at *5 (S.D. Ala. Aug. 13, 2019). The only inference the Court will make is that Congress meant what it said.

The Sentencing Commission's policy statement is also not inapplicable because some portions are outdated. True enough, § 1B1.13 inaccurately states that only BOP can move for compassionate release on a inmate's behalf. But that defect does not affect the Sentencing Commission's definition of "extraordinary and compelling reasons." Martin does not point to "any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments." *United States v. Shields*, No. 12–CR–00410–BLF–1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). This follows the general policy in favor of severability. *See generally Alaska Airlines, Inc. v. Brock*, 480 U.S. 578, 684–85 (1987). The Court must therefore apply the portion of § 1B1.13 that authorizes the Bureau of Prisons to define "other reasons" because it does not run afoul with the text or purpose of 18 U.S.C. § 3582(c).

Finally, proceedings under § 3582(c) are not governed by *United States v. Booker*, 543 U.S. 220, 243–44 (2005), which made the Sentencing Guidelines discretionary in some cases. *See Dillon v. United States*, 560 U.S. 817, 828 (2010). The Sentencing Commission's policy statement therefore remains binding. *See id.* And because the Bureau of Prisons does not identify non-retroactive amendments to sentence enhancement provisions as an *extraordinary or compelling reason* warranting compassionate release, the Court must deny Martin's Motion.

### B. Motion to File Under Seal

"The court may order that a filing be made under seal without redaction." Fed. R. Crim. P. 49.1(d). But "the general rule [is] that material submitted in the trial of a criminal case ought to be available to the press and to the public." *In re Assoc. Press*, 162 F.3d 503, 509 (7th Cir. 1998). Indeed, "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980). Transparency in

court proceedings ensures their "integrity and quality." *United States v. Ladd*, 218 F.3d 701, 706 (7th Cir. 2000). District courts must therefore "be sensitive to the rights and the public in determining whether any particular document, or class of documents, is appropriately filed under seal." *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984).

Martin argues that the Court should seal his Motion for Compassionate Release and this Memorandum & Order because he fears that other inmates will find out he is an ex-law-enforcement officer. The bulk of Martin's docket sheet, however, is unsealed and available to the public. In other words, Martin has been imprisoned nearly a decade and is only now articulating this unparticularized concern for his safety. The Court is doubtful that sealing his Motion or this Memorandum & Order will prevent other inmates from researching Martin's past. What's more, criminal defendants with immodest histories routinely appear before this Court and enter the prison population. Sealing every substantive docket entry based only on a hypothetical threat of injury would turn the presumption of openness on its head. This case is no different, and sealing Martin's Motion or this Memorandum & Order is inappropriate.

### III.    CONCLUSION

The Court **DENIES** Defendant Raymond M. Martin's Motion for Compassionate Release and Motion to File Under Seal.

**IT IS SO ORDERED.**

Dated: Tuesday, August 4, 2020

S/J. Phil Gilbert
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**
